FILED
2017 Sep-13  PM 02:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **CHRISTOPHER HIGHFIELD,** individually and on behalf of all others similarly situated, | ) ) ) ) |
| **Plaintiff,** | ) ) **Case No.: _____** |
| **v.** | ) ) **Class Action** |
| **EQUIFAX, INC. and EQUIFAX INFORMATION SOLUTIONS, LLC,** | ) ) **Jury Trial Demanded** ) ) |
| **Defendants.** | ) ) |

## CLASS ACTION COMPLAINT

Plaintiff Christopher Highfield on behalf of himself, and on behalf of classes of persons similarly situated, brings this Class Action Complaint and Jury Trial Demand against Defendants Equifax, Inc. and Equifax Information Solutions, LLC (sometimes referred to collectively as "Defendants" or "Equifax"), and alleges:

1.      Plaintiff brings this class action complaint against Equifax for its failures to protect and secure consumers' personal identifying information ("PII"), including full names, social security numbers, dates of birth, addresses and some driver's license numbers of Plaintiff and some 143 million similarly situated

consumers in the United States.   Additionally, Equifax has acknowledged that credit card numbers for approximately 209,000 United States consumers, and dispute information, containing additional PII, for approximately 182, 000 United States consumers, have been accessed as part of its data breach.

2.      On September 7, 2017, Equifax publicly acknowledged a cybersecurity incident ("Data Breach") that has potentially impacted approximately half of all U.S. consumers who have credit histories.  Equifax admitted that it discovered this data breach on July 29, 2017, and that the unauthorized access to its files, including Plaintiff's and the class members' PII, started in mid-May 2017.

3.      Rather than timely disclose its data breach, Equifax waited almost six (6) weeks to publicly disclose the occurrence. In the interim, three Equifax executives sold some $1.8 million of Equifax stock.  These executives include Chief Financial Officer John Gamble, who sold approximately $946,000 worth of Equifax stock on August 1, 2017; President of United States Information Solutions Joseph Loughran, who sold approximately $584,000 of Equifax stock, also on August 1, 2017; and President of Workforce Solutions Rodolfo Ploder, who sold approximately $250,000 of Equifax stock on August 2, 2017.

4.      Equifax compromised Plaintiff's and the consumer classes' PII due to its failure to properly protect and secure PII.

5.      Equifax knew or certainly should have known it was vulnerable to

potential data breaches as Equifax experienced several data breaches between 2013 and 2016. Additionally, Experian, a competing consumer reporting agency, has previously been breached, which should have put Equifax on high alert.

6.      Equifax had inadequate data security and failed in its duty to protect the PII that it collected during the course of its business from unauthorized disclosure.

7.      Equifax intentionally, willfully, recklessly, or negligently failed to take reasonable, adequate measures to ensure the security of its data systems and to protect Plaintiff's and class members' PII

8.      Equifax further disregarded the rights of Plaintiff and Class members by intentionally, willfully, recklessly, or negligently failing to disclose to its customers the material fact that it did not have adequate computer systems and security practices to safeguard PII, failing to take available steps to prevent and stop the breach from ever happening, and failing to monitor and detect the breach on a timely basis.

9.      As a result of the Equifax Data Breach, Plaintiff's PII and the Class members' PII has been exposed to criminals for misuse.  The injuries suffered by Plaintiff and Class members, or likely to be suffered by Plaintiff and Class members as a direct result of the Equifax Data Breach include:

a.      unauthorized use of their PII;

b.      theft of their personal and financial information;

3

c.      costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;

d.      damages arising from the inability to use their PII;

e.      loss of use of and access to their account funds and costs associated with inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts, including missed payments on bills and loans, late charges and fees, and adverse effects on their credit including decreased credit scores and adverse credit notations;

f.      costs associated with time spent and the loss of productivity or the enjoyment of one's life from taking time to address and attempt to ameliorate, mitigate and deal with the actual and future consequences of the Data Breach, including finding fraudulent charges, purchasing credit monitoring and identity theft protection services, and the stress, nuisance and annoyance of dealing with all issues resulting from the Equifax Data Breach;

g.      the imminent and certainly impending injury flowing from potential fraud and identify theft posed by their PII being placed in the hands of criminals and already misused via the sale of Plaintiff's and Class members' information on the Internet black market;

h.      damages to and diminution in value of their PII entrusted to Equifax for the sole purpose of purchasing products and services from Equifax; and

i.      the loss of Plaintiff's and Class members' privacy.

10.     The injuries to the Plaintiff and Class members were directly and proximately caused by Equifax's failure to implement or maintain adequate data security measures for PII.

11.     Further, Plaintiff retains a significant interest in ensuring that his PII, which, although provided without authorization to the person(s) initiating the Equifax Data Breach, also remains in Equifax's possession, is protected from further data breaches and unauthorized disclosures, and seeks to remedy the harms he has suffered on behalf of himself and similarly situated consumers whose PII was stolen as a result of the Equifax data breach.

12.     Plaintiff brings this action to remedy these harms on behalf of himself and all similarly situated individuals whose PII was accessed during the Equifax data breach.  Plaintiff seeks the following remedies, among others: statutory damages under the Fair Credit Reporting Act ("FCRA") and state consumer protection statutes, reimbursement of out-of-pocket losses, other compensatory damages, further and more robust credit monitoring services with accompanying identity theft insurance, and injunctive relief including an order requiring Equifax to implement improved data security measures.

## PARTIES

13.    Plaintiff Christopher Highfield is an adult resident and citizen of Madison County, Alabama.  Plaintiff is a victim of the Equifax Data Breach. Plaintiff Highfield has spent extra time and effort monitoring his financial accounts following the Equifax Data Breach.

14.    Defendant Equifax, Inc. is a Delaware corporation with its principal place of business located at 1550 Peachtree Street NW, Atlanta, Georgia 30309-2402.  Equifax, Inc. may be served through its registered agent, Prentice Hall Corporation System Inc., at 641 South Lawrence Street, Montgomery, Alabama 36104.  Equifax, Inc. is a public corporation, trading on the New York Stock Exchange as "EFX."  Equifax, Inc. is the parent corporation of Equifax Information Solutions, LLC.

15.    Defendant Equifax Information Solutions, LLC is a limited liability company with its principal place of business located at 1550 Peachtree Street NW Atlanta, Georgia 30309-2402.  Equifax Information Solutions, LLC may be served through its registered agent, Prentice Hall Corporation System Inc., at 641 South Lawrence Street, Montgomery, Alabama 36104.  Equifax Information Solutions, LLC is a "provider of consumer credit reports and credit monitoring programs."

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).  The amount in controversy exceeds $5 million exclusive of interest and costs.  There are more than 100 putative class members.  Plaintiff and Equifax are of diverse citizenship.

17.     This Court has personal jurisdiction over Equifax because Equifax regularly conducts business in Alabama and has sufficient minimum contacts in Alabama.  Equifax intentionally availed itself of this jurisdiction by marketing and selling products and services and by accepting and processing payments for those products and services within Alabama.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District and/or because Equifax is subject to this Court's jurisdiction with respect to this action.

## STATEMENT OF FACTS

19.     Equifax is one of three consumer reporting agencies that compiles and maintains files on consumers on a nationwide basis.  As such, Equifax also tracks and rates the financial history of U.S. consumers.  Equifax stores and maintains a huge amount of credit data regarding U.S. consumers, including, in addition to their PII, account numbers, loan information (including original loan amounts and dates,

balances, past due amounts, current status and payment history), credit card accounts (including credit limit, balances, past due amounts, current status and payment history), as well as information on everything from child support payments, credit limits, missed or past due rent and utilities payments, bankruptcy history, liens, addresses, and employment history.  All of this information, and more, factors into credit scores and can and does affect the availability of credit, the terms upon which credit is offered, insurance underwriting decisions, and employment decisions.

20.     Unlike data breaches that have affected the customers of certain retail stores or customers whose credit cards were issued by particular financial institutions, here, many individual consumers affected by the Equifax Data Breach may not even be aware that their data is exposed from the Equifax Data Breach. Equifax's data is furnished by credit card companies, banks, credit unions, retailers, and lenders who report on the credit activity of individuals to credit reporting agencies.  In addition, Equifax obtains data published in public records.

21.     According to Equifax's September 7, 2017 press release, the breach was discovered on July 29th.  The perpetrators gained access by "[exploiting] a [...] website application vulnerability" on one of the company's U.S.-based servers.  The hackers were then able to retrieve "certain files."

22.     Included among those files was a treasure trove of personal data: names, dates of birth, Social Security numbers and addresses.  In some cases –

Equifax estimates around 209,000 – the breached data also included actual credit card numbers.  Documentation about disputes was also leaked, exposing additional personal information of approximately 182,000 American consumers.

23.     PII like this is extremely valuable to cybercriminals, who have capitalized and will, for years, continue to capitalize on it by obtaining unauthorized credit in the names of injured U.S. consumers, launching targeted phishing campaigns and continuing to sell the PII to others for their unauthorized use.

24.     Plaintiff suffered actual injury in the form of damages to and diminution in the value of their PII – a form of intangible property that Plaintiff entrusted to Equifax and that was compromised in and as a result of the Equifax Data Breach.

25.     Additionally, Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of future fraud, identity theft and misuse posed by their PII being placed in the hands of criminals who have already, or will imminently, misuse such information.

26.     Moreover, Plaintiff has a continuing interest in ensuring that his private information, which remains in the possession of Equifax, is protected and safeguarded from future breaches.

27.     At all relevant times, Equifax was well-aware, or reasonably should have been aware, that the PII collected, maintained and stored in its computer

systems is highly sensitive, susceptible to attack, and could be used by third parties for wrongful purposes, such as identity theft and fraud.

28.    It is well known and the subject of many media reports that PII is highly coveted and a frequent target of hackers.  Despite the frequent public announcements of data breaches of corporate entities, including Equifax competitor Experian, Equifax maintained an insufficient and inadequate system to protect the PII of Plaintiff and Class members.

29.    PII is a valuable commodity because it contains not only payment card numbers but PII as well. A "cyber black market" exists in which criminals openly post stolen payment card numbers, social security numbers, and other personal information on a number of underground Internet websites.  PII is "as good as gold" to identity thieves because they can use victims' personal data to open new financial accounts and take out loans in another person's name, incur charges on existing accounts, or clone ATM, debit, or credit cards.

30.    Legitimate businesses and the criminal underground alike recognize the value in PII contained in a merchant's data systems; otherwise, they would not aggressively seek or pay for it.  For example, in "one of 2013's largest breaches . . . not only did hackers compromise the [card holder data] of three million customers, they also took registration data [containing PII] from 38 million users."[1]

---

[1] Verizon 2014 PCI Compliance Report, available at:

31.     At all relevant times, Equifax knew, or reasonably should have known, of the importance of safeguarding PII and of the foreseeable consequences that would occur if its data security system was breached, including, specifically, the significant costs that would be imposed on individuals as a result of a breach.

32.     Equifax was, or should have been, fully aware of the significant number of individuals whose PII it collected, and thus, the significant number of individuals who would be harmed by a breach of Equifax's systems.

33.     Unfortunately, despite publicly available knowledge of the continued compromises of PII in the hands of unauthorized third parties, Equifax's approach to maintaining the privacy and security of Plaintiff's and the Class members' PII was lackadaisical, cavalier, reckless, or at the very least, negligent.

34.     The ramifications of Equifax's failure to keep Plaintiff's and Class members' data secure are severe.

35.     The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[2]   The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person."[3]

---

http://www.cisco.com/c/dam/en_us/solutions/industries/docs/retail/verizon_pci2014.pdf (hereafter "2014 Verizon Report"), at 54 (last visited September 11, 2017).
[2] 17 C.F.R § 248.201 (2013).
[3] *Id.*

36.    Personal identifying information is a valuable commodity to identity thieves once the information has been compromised.   As the Federal Trade Commission (or "FTC") recognizes, once identity thieves have personal information, "they can drain your bank account, run up your credit cards, open new utility accounts, or get medical treatment on your health insurance."[4]

37.    Identity thieves can use personal information, such as Plaintiff's and Class members' PII, which Equifax failed to keep secure, to perpetrate a variety of crimes that harm victims.   For instance, identity thieves may commit various types of government fraud such as:   immigration fraud; obtaining a driver's license or identification card in the victim's name but with another's picture; using the victim's information to obtain government benefits; or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.

38.    Javelin Strategy and Research reports that, over the past six years, identity thieves have stolen $112 billion.[5]

39.    Reimbursing a consumer for only the financial loss due to fraud does not make that individual whole again.   On the contrary, identity theft victims must expend numerous hours of their own time and pay out-of-pocket costs to repair the

---

[4] Federal Trade Commission, Warning Signs of Identity Theft, available at: https://www.consumer.ftc.gov/articles/0271-warning-signs-identity-theft (last visited September 11, 2017).
[5] *See* https://www.javelinstrategy.com/coverage-area/2016-identity-fraud-fraud-hits-inflection-point (last visited September 11, 2017).

impact to their credit.  A study by the Department of Justice's Bureau of Justice Statistics ("BJS") found that identity theft victims "reported spending an average of about 7 hours clearing up the issues" and resolving the consequences of fraud in 2014.[6]

40.     There may be a time lag between when harm occurs versus when it is discovered, and also between when PII or personal confidential data ("PCD") is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft.  Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[7]

41.     Plaintiff and Class members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights.  The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

42.     The PII of Plaintiff and Class members is private and sensitive in nature and was inadequately protected by Equifax.  Equifax did not obtain Plaintiff's and

---

[6] Victims of Identity Theft, 2014 (Sept. 2015) available at:
http://www.bjs.gov/content/pub/pdf/vit14.pdf (last visited September 11, 2017).
[7] GAO, Report to Congressional Requesters, at 29 (June 2007), available at
http://www.gao.gov/new.items/d07737.pdf (last visited September 11, 2017).

Class members' consent or authorization to disclose their PII to any other person, as required by applicable law and industry standards.

43.     The Equifax Data Breach was a direct and proximate result of Equifax's failure to properly safeguard and protect Plaintiff's and Class members' PII from unauthorized access, use, and disclosure, as required by various state and federal regulations, industry practices, and the common law, including Equifax's failure to establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiff's and Class members' PII to protect against reasonably foreseeable threats to the security or integrity of such information.

44.     Equifax had the resources to prevent a breach, but neglected to adequately invest in data security, despite the increasing number of well-publicized data breaches.

45.     Had Equifax remedied the deficiencies in its data security systems, followed security guidelines, and adopted security measures recommended by experts in the field, it could and would have prevented the Equifax Data Breach and prevented the theft of 143 United States consumers, including Plaintiff's and Class members' PII.

46.     As a direct and proximate result of Equifax's wrongful actions and inaction and the resulting Equifax Data Breach, Plaintiff and Class members have

been placed at an imminent, immediate, and continuing increased risk of harm from identity theft and identity fraud, requiring them to take the time which they otherwise would have dedicated to other life demands such as work and effort to mitigate the actual and potential impact of the Equifax Data Breach on their lives including, inter alia, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports. This time has been lost forever and cannot be recaptured. In all manners of life in this country, time has constantly been recognized as compensable. Indeed, many consumers are compensated on an hourly basis, and, even if retired from the work force, consumers should be free of spending their time to address and minimize the consequences of Equifax's Data Breach.

47. Equifax's wrongful actions and inaction directly and proximately caused the theft and dissemination into the public domain of Plaintiff's and Class members' PII, causing them to suffer, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation, including:

a. theft of their personal and financial information;

b. unauthorized charges on their debit and credit card accounts;

c. the imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of

15

criminals and already misused via the sale of Plaintiff's and Class members' information on the black market;

d.    the untimely and inadequate notification of the Data Breach;

e.    the improper disclosure of their PII;

f.    loss of privacy;

g.    ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach;

h.    ascertainable losses in the form of deprivation of the value of their PII and PCD, for which there is a well-established national and international market;

i.    ascertainable losses in the form of the loss of cash back or other benefits as a result of their inability to use certain accounts and cards affected by the Data Breach;

j.    loss of use of and access to their account funds and costs associated with the inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts, including missed payments on bills and loans, late charges and fees, and adverse effects on their credit including adverse credit notations; and,

k.     the loss of productivity and value of their time spent to address attempt to ameliorate, mitigate and deal with the actual and future consequences of the data breach, including finding fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection services, imposition of withdrawal and purchase limits on compromised accounts, and the stress, nuisance and annoyance of dealing with all such issues resulting from the Data Breach.

48.     Equifax has not offered customers any meaningful credit monitoring or identity theft protection services, despite the fact that it is well known and acknowledged by the government that damage and fraud from a data breach can take years to occur.  As a result, Plaintiff and Class members are left to their own actions to protect themselves from the financial damage Equifax has allowed to occur.   The additional cost of adequate and appropriate coverage, or insurance, against the losses and exposure that Equifax's actions have created for Plaintiff and Class members, is ascertainable and is a determination appropriate for the trier of fact. Equifax has also not offered to cover any of the damages sustained by Plaintiff or Class members.

49.     While the PII of Plaintiff and members of the Class has been stolen, Equifax continues to hold PII of consumers, including Plaintiff and Class members. Particularly because Equifax and has demonstrated an inability to prevent a breach or stop it from continuing even after being detected, Plaintiff and members of the

Class have an undeniable interest in insuring that their PII is secure, remains secure, is properly and promptly destroyed and is not subject to further theft.

## CLASS ACTION ALLEGATIONS

50.     Plaintiff seeks relief on behalf of himself and as representative of all others who are similarly situated.  Pursuant to Fed. R. Civ. P. 23(a), (b)(2), (b)(3) and (c)(4), Plaintiff seeks certification of a Nationwide class defined as follows:

> All individuals residing in the United States whose personally identifiable information was acquired by unauthorized persons in the data breach announced by Equifax in September 2017 (the "Nationwide Class").

51.     Pursuant to Fed. R. Civ. P. 23, and in the alternative to claims asserted on behalf of the Nationwide Class, Plaintiff asserts claims under the laws of the individual States, and on behalf of separate statewide classes, defined as follows:

> All individuals residing in [each STATE] whose personally identifiable information was acquired by unauthorized persons in the data breach announced by Equifax in September 2017 (the "Statewide Classes").

52.     Excluded from each of the above Classes are Equifax and any of its affiliates, parents or subsidiaries; all employees of Equifax; all persons who make a timely election to be excluded from the Class; government entities; and the judges to whom this case is assigned and their immediate family and court staff.

53.     Plaintiff hereby reserves the right to amend or modify the class definition with greater specificity or division after having had an opportunity to conduct discovery.

54.     Each of the proposed Classes meets the criteria for certification under Federal Rule of Civil Procedure 23(a), (b)(2), (b)(3) and (c)(4).

55.     The numerosity requirement of Fed. R. Civ. P. 23(a)(1) is satisfied. Consistent with Rule 23(a)(1), the members of the Class are so numerous and geographically dispersed that the joinder of all members is impractical.  While the exact number of Class members is unknown to Plaintiff at this time, the proposed Class include at least 143 million individuals whose PII was compromised in the Equifax data breach.  Class members may be identified through objective means. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

56.     The commonality requirement of Fed. R. Civ. P. 23(a)(2) and the predominance requirement of Fed. R. Civ. P. 23 (b)(3) are satisfied.  Consistent with Fed. R. Civ. P. 23(a)(2) and with 23(b)(3)'s predominance requirement, this action involves common questions of law and fact that predominate over any questions affecting individual Class members. The common questions include:

a.     Whether Equifax had a duty to protect PII;

b.     Whether Equifax knew or should have known of the susceptibility of their data security systems to a data breach;

c.   Whether Equifax's security measures to protect their systems were reasonable in light of the measures recommended by data security experts;

d.   Whether Equifax was negligent in failing to implement reasonable and adequate security procedures and practices;

e.   Whether Equifax's failure to implement adequate data security measures allowed the Data Breach to occur;

f.   Whether Equifax's conduct constituted deceptive trade practices;

g.   Whether Equifax's conduct, including their failure to act, resulted in or was the proximate cause of the breach of its systems, resulting in the loss of the PII of Plaintiff and Class members;

h.   Whether Plaintiff and Class members were injured and suffered damages or other acceptable losses because of Equifax's failure to reasonably protect its POS systems, data systems, and computer network; and,

i.   Whether Plaintiff and Class members are entitled to relief.

57.   The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied. Consistent with Fed. R. Civ. P. 23(a)(3), Plaintiff's claims are typical of those of other Class members. Plaintiff had his PII compromised in the Data Breach.

Plaintiff's damages and injuries are akin to other Class members and Plaintiff seeks relief consistent with the relief of the Class.

58.   The adequacy requirement of Fed. R. Civ. P. 23(a)(4) is satisfied. Consistent with Fed. R. Civ. P. 23(a)(4), Plaintiff is an adequate representative of the Class because Plaintiff is a member of the Class and is committed to pursuing this matter against Equifax to obtain relief for the Class.  Plaintiff has no conflicts of interest with the Class. Plaintiff's Counsel are competent and experienced in litigating class actions, including privacy and data security litigation.   Plaintiff intends to vigorously prosecute this case and will fairly and adequately protect the Class' interests.

59.   The superiority requirement of Fed. R. Civ. P. 23(b)(3) is satisfied. Consistent with Fed. R. Civ. P 23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.   The quintessential purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to individual plaintiffs may not be sufficient to justify individual litigation.  Here, the damages suffered by Plaintiff and the Class are relatively small compared to the burden and expense required to individually litigate their claims against Equifax, and thus, individual litigation to redress Equifax's wrongful conduct would be impracticable. Individual litigation by

each Class member would also strain the court system, create the potential for inconsistent or contradictory judgments, and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

60. Injunctive and Declaratory Relief are also available. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) and (c). Equifax, through its uniform conduct, has acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole.

61. Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

    a.    Whether Equifax failed to timely notify the public of the Data Breach;

    b.    Whether Equifax owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their PII;

    c.    Whether Equifax's security measures were reasonable in light of data security recommendations, and other measures recommended by data security experts;

d.    Whether Equifax failed to adequately comply with industry standards amounting to negligence;

e.    Whether Equifax failed to take commercially reasonable steps to safeguard the PII of Plaintiff and the Class members; and,

f.    Whether adherence to data security recommendations, and measures recommended by data security experts would have reasonably prevented the Data Breach.

62.    Finally, all members of the proposed Classes are readily ascertainable. Equifax has access to information regarding the Data Breach, the time period of the Data Breach, and which individuals were potentially affected. Using this information, the members of the Class can be identified and their contact information ascertained for purposes of providing notice to the Class.

**COUNT I**
**NEGLIGENCE**
**(ON BEHALF OF PLAINTIFF AND**
**THE NATIONWIDE CLASS, OR, ALTERNATIVELY, PLAINTIFF**
**AND THE SEPARATE STATEWIDE CLASSES)**

63.    Plaintiff restates and realleges the facts of Paragraphs 1 through 62 as if fully set forth herein.

64.    Upon accepting and storing the PII of Plaintiff and Class Members in its computer systems and on its networks, Equifax undertook and owed a duty to Plaintiff and Class Members to exercise reasonable care to secure and safeguard that

information and to use commercially reasonable methods to do so.  Equifax knew that the PII was private and confidential and should be protected as private and confidential.

65.     Equifax owed a duty of care not to subject Plaintiff and Class members, along with their PII, to an unreasonable risk of harm because they were foreseeable and probable victims of any inadequate security practices.

66.     Equifax owed numerous duties to Plaintiff and to members of the Nationwide Class, including the following:

a.     to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting PII in its possession;

b.     to protect PII using reasonable and adequate security procedures and systems that are compliant with industry-standard practices; and

c.     to implement processes to quickly detect a data breach and to timely act on warnings about data breaches.

67.     Equifax also breached its duty to Plaintiff and the Class Members to adequately protect and safeguard PII by knowingly disregarding standard information security principles, despite obvious risks, and by allowing unmonitored and unrestricted access to unsecured PII.  Furthering their dilatory practices, Equifax failed to provide adequate supervision and oversight of the PII with which they were and are entrusted, in spite of the known risk and foreseeable likelihood of breach and

misuse, which permitted an unknown third party to gather PII of Plaintiff and Class Members, misuse the PII and intentionally disclose it to others without consent.

68.     Equifax knew, or should have known, of the risks inherent in collecting and storing PII, the vulnerabilities of its data security systems, and the importance of adequate security. Equifax knew about numerous, well-publicized data breaches, including the previous data breach at Experian and the previous data breaches at Equifax.

69.     Equifax knew, or should have known, that their data systems and networks did not adequately safeguard Plaintiff's and Class Members' PII.

70.     Equifax breached its duties to Plaintiff and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII of Plaintiff and Class Members.

71.     Because Equifax knew that a breach of its systems would damage millions of individuals, including Plaintiff and Class members, Equifax had a duty to adequately protect their data systems and the PII contained thereon.

72.     Equifax had a special relationship with Plaintiff and Class members. Plaintiff's and Class members' willingness to entrust Equifax with their PII was predicated on the understanding that Equifax would take adequate security precautions.  Moreover, only Equifax had the ability to protect its systems and the PII it stored on them from attack.

25

73.     Equifax's own conduct also created a foreseeable risk of harm to Plaintiff and Class members and their PII. Equifax's misconduct included failing to: (1) secure its systems, despite knowing their vulnerabilities, (2) comply with industry standard security practices, (3) implement adequate system and event monitoring, and (4) implement the systems, policies, and procedures necessary to prevent this type of data breach.

74.     Equifax also had independent duties under state and federal laws that required Equifax to reasonably safeguard Plaintiff's and Class members' PII and promptly notify them about the data breach.

75.     Equifax breached its duties to Plaintiff and Class members in numerous ways, including:

a.      by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII of Plaintiff and Class members;

b.      by creating a foreseeable risk of harm through the misconduct previously described;

c.      by failing to implement adequate security systems, protocols and practices sufficient to protect Plaintiff's and Class members' PII, both before and after learning of the data breach;

d.      by failing to comply with the minimum industry data security standards during the period of the Data Breach; and

26

    e.    by failing to timely and accurately disclose that Plaintiff's and Class

members' PII had been improperly acquired or accessed.

76.    Through Equifax's acts and omissions described in this Complaint, including Equifax's failure to provide adequate security and its failure to protect PII of Plaintiff's and Class members from being foreseeably captured, accessed, disseminated, stolen and misused, Equifax unlawfully breached its duty to use reasonable care to adequately protect and secure PII of Plaintiff and Class members during the time it was within Equifax possession or control.

77.    The law further imposes an affirmative duty on Equifax to timely disclose the unauthorized access and theft of the PII to Plaintiff and the Class so that Plaintiff and Class members can take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuse of their PII.

78.    Equifax breached its duty to notify Plaintiff and Class Members of the unauthorized access by waiting many months after learning of the Data Breach to notify Plaintiff and Class Members and then by failing to provide Plaintiff and Class Members information regarding the Data Breach until September 2017.  Instead, its executives disposed of at least $1.8 million worth of shares in the company after Equifax learned of the Data Breach but before it was publicly announced.  To date, Equifax has not provided sufficient information to Plaintiff and Class Members

regarding the extent of the unauthorized access and continues to breach its disclosure obligations to Plaintiff and the Class.

79.    Through Equifax's acts and omissions described in this Complaint, including Equifax's failure to provide adequate security and its failure to protect PII of Plaintiff and Class Members from being foreseeably captured, accessed, disseminated, stolen and misused, Equifax unlawfully breached its duty to use reasonable care to adequately protect and secure PII of Plaintiff and Class members during the time it was within Equifax's possession or control.

80.    Further, through its failure to provide timely and clear notification of the Data Breach to consumers, Equifax prevented Plaintiff and Class Members from taking meaningful, proactive steps to secure their financial data and bank accounts.

81.    Upon information and belief, Equifax improperly and inadequately safeguarded PII of Plaintiff and Class Members in deviation of standard industry rules, regulations, and practices at the time of the unauthorized access.  Equifax's failure to take proper security measures to protect sensitive PII of Plaintiff and Class members as described in this Complaint, created conditions conducive to a foreseeable, intentional criminal act, namely the unauthorized access of PII of Plaintiff and Class members.

82.    Equifax's conduct was grossly negligent and departed from all reasonable standards of care, including, but not limited to: failing to adequately

protect the PII; failing to conduct regular security audits; failing to provide adequate and appropriate supervision of persons having access to PII of Plaintiff and Class members; and failing to provide Plaintiff and Class members with timely and sufficient notice that their sensitive PII had been compromised.

83.    Neither Plaintiff nor the other Class members contributed to the Data Breach and subsequent misuse of their PII as described in this Complaint.

84.    As a direct and proximate cause of Equifax's conduct, Plaintiff and the Class suffered damages and/or will likely suffer damages including, but not limited to: damages arising from the unauthorized charges on their debit or credit cards or on cards that were fraudulently obtained through the use of the PII of Plaintiff and Class Members; damages arising from Plaintiff and Class Members inability to use their debit or credit cards because those cards were cancelled, suspended, or otherwise rendered unusable as a result of the Equifax Data Breach and/or false or fraudulent charges stemming from the Data Breach, including but not limited to late fees charges and foregone cash back rewards; damages from lost time and effort to mitigate the actual and potential impact of the Equifax Data Breach on their lives including, inter alia, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports and damages from identity theft, which may take

months if not years to discover and detect, given the far-reaching, adverse and detrimental consequences of identity theft and loss of privacy. The nature of other forms of economic damage and injury may take years to detect, and the potential scope can only be assessed after a thorough investigation of the facts and events surrounding the theft mentioned above.

**COUNT II**
**NEGLIGENCE PER SE**
**(ON BEHALF OF PLAINTIFF AND**
**THE NATIONWIDE CLASS, OR, ALTERNATIVELY, PLAINTIFF**
**AND THE SEPARATE STATEWIDE CLASSES)**

85.    Plaintiff restates and realleges the facts of Paragraphs 1 through 62 as if fully set forth herein.

86.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Equifax, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of Equifax's duty in this regard.

87.    Equifax violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards, as described in detail herein. Equifax's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored, and the foreseeable

consequences of a data breach at a corporation such as Equifax, including, specifically, the immense damages that would result to Plaintiff and Class Members.

88.     Equifax's violation of Section 5 of the FTC Act constitutes negligence per se.

89.     Plaintiff and Class Members are within the class of persons that the FTC Act was intended to protect.

90.     The harm that occurred as a result of the Equifax Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

91.     As a direct and proximate result of Equifax's negligence per se, Plaintiff and the Class have suffered, continue to suffer, and/or will likely suffer damages arising from Plaintiff's inability to use their debit or credit cards because those cards were cancelled, suspended, or otherwise rendered unusable as a result of the Equifax Data Breach and/or false or fraudulent charges stemming from the Data Breach, including but not limited to late fees charges and foregone cash back rewards; damages from lost time and effort to mitigate the actual and potential impact of the Equifax Data Breach on their lives including, inter alia, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial

institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports and damages from identity theft, which may take months if not years to discover and detect, given the far-reaching, adverse and detrimental consequences of identity theft and loss of privacy.

## COUNT III
## WILLFUL VIOLATION OF THE FAIR CREDIT REPORTING ACT ("FCRA")
## (ON BEHALF OF PLAINTIFF AND
## THE NATIONWIDE CLASS, OR, ALTERNATIVELY, PLAINTIFF
## AND THE SEPARATE STATEWIDE CLASSES)

92.     Plaintiff restates and realleges the facts of Paragraphs 1 through 62 as if fully set forth herein.

93.     As individuals, Plaintiff and Class member are consumers entitled to the protections of the FCRA. 15 U.S.C. § 1681a(c).

94.     Under the FCRA, a "consumer reporting agency" is defined as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties . . . ." 15 U.S.C. § 1681a(f).

95.     Equifax is a consumer reporting agency under the FCRA because, for monetary fees, it regularly engages in the practice of assembling or evaluating

32

consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties.

96.   As a consumer reporting agency, the FCRA requires Equifax to "maintain reasonable procedures designed to . . . limit the furnishing of consumer reports to the purposes listed under section 1681b of this title." 15 U.S.C. § 1681e(a).

97.   Under the FCRA, a "consumer report" is defined as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for -- (A) credit . . . to be used primarily for personal, family, or household purposes; . . . or (C) any other purpose authorized under section 1681b of this title." 15 U.S.C. § 1681a(d)(1).  The compromised data was a consumer report under the FCRA because it was a communication of information bearing on Class members' credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living used, or expected to be used or collected in whole or in part, for the purpose of serving as a factor in establishing the Class members' eligibility for credit.

98.   As a consumer reporting agency, Equifax may only furnish a consumer report under the limited circumstances set forth in 15 U.S.C. § 1681b, "and no other."

15 U.S.C. § 1681b(a). None of the purposes listed under 15 U.S.C. § 1681b permit credit reporting agencies to furnish consumer reports to unauthorized or unknown entities, or computer hackers such as those who accessed the Nationwide Class members' PII. Equifax violated § 1681b by furnishing consumer reports to unauthorized or unknown entities or computer hackers, as detailed above.

99.     Equifax furnished the Plaintiff's and Nationwide Class members' consumer reports by disclosing their consumer reports to unauthorized entities and computer hackers; allowing unauthorized entities and computer hackers to access their consumer reports; knowingly and/or recklessly failing to take security measures that would prevent unauthorized entities or computer hackers from accessing their consumer reports; and/or failing to take reasonable security measures that would prevent unauthorized entities or computer hackers from accessing their consumer reports.

100.   The FTC has pursued enforcement actions against consumer reporting agencies under the FCRA for failing to "take adequate measures to fulfill their obligations to protect information contained in consumer reports, as required by the" FCRA, in connection with data breaches.

101.   Equifax willfully and/or recklessly violated § 1681b and § 1681e(a) by providing impermissible access to consumer reports and by failing to maintain reasonable procedures designed to limit the furnishing of consumer reports to the

purposes outlined under section 1681b of the FCRA.  The willful and reckless nature of Equifax's violations is supported by, among other things, former employees' admissions that Equifax's data security practices have deteriorated in recent years, and Equifax's numerous other data breaches in the past.  Further, Equifax touts itself as an industry leader in breach prevention; thus, Equifax was well aware of the importance of the measures organizations should take to prevent data breaches, and willingly failed to take them.

102.   Equifax also acted willfully and recklessly because it knew or should have known about its legal obligations regarding data security and data breaches under the FCRA.  These obligations are well established in the plain language of the FCRA and in the promulgations of the FTC.  *See*, *e.g.*, 55 Fed. Reg. 18804 (May 4, 1990), 1990 Commentary On The Fair Credit Reporting Act. 16 C.F.R. Part 600, Appendix To Part 600, Sec. 607 2E.  Equifax obtained or had available these and other substantial written materials that apprised them of their duties under the FCRA. Any reasonable consumer reporting agency knows or should know about these requirements.  Despite knowing of these legal obligations, Equifax acted consciously in breaching known duties regarding data security and data breaches and depriving Plaintiff and other members of the classes of their rights under the FCRA.

103.   Equifax's willful and/or reckless conduct provided a means for unauthorized intruders to obtain and misuse Plaintiff's and the Nationwide Class members' personal information for no permissible purposes under the FCRA.

104.   Plaintiff and the Nationwide Class members have been damaged by Equifax's willful or reckless failure to comply with the FCRA.  Therefore, Plaintiff and each of the Nationwide Class members are entitled to recover "any actual damages sustained by the consumer . . . or damages of not less than $100 and not more than $1,000." 15 U.S.C. § 1681n(a)(1)(A).

105.   Plaintiff and the Nationwide Class members are also entitled to punitive damages, costs of the action, and reasonable attorneys' fees. 15 U.S.C. § 1681n(a)(2)& (3).

**COUNT IV**
**NEGLIGENT VIOLATION OF THE FAIR CREDIT REPORTING**
**ACT**
**(ON BEHALF OF PLAINTIFF AND**
**THE NATIONWIDE CLASS, OR, ALTERNATIVELY, PLAINTIFF**
**AND THE SEPARATE STATEWIDE CLASSES)**

106.   Plaintiff restates and realleges the facts of Paragraphs 1 through 62 as if fully set forth herein.

107.   Equifax was negligent in failing to maintain reasonable procedures designed to limit the furnishing of consumer reports to the purposes outlined under section 1681b of the FCRA.  Equifax's negligent failure to maintain reasonable procedures is supported by, among other things, former employees' admissions that

Equifax's data security practices have deteriorated in recent years, and Equifax's numerous other data breaches in the past.  Further, as an enterprise claiming to be an industry leader in data breach prevention, Equifax was well aware of the importance of the measures organizations should take to prevent data breaches, yet failed to take them.

108.   Equifax's negligent conduct provided a means for unauthorized intruders to obtain Plaintiff's and the Nationwide Class members' PII and consumer reports for no permissible purposes under the FCRA.

109.   Plaintiff and the Nationwide Class members have been damaged by Equifax's negligent failure to comply with the FCRA.  Therefore, Plaintiff and each of the Nationwide Class members are entitled to recover "any actual damages sustained by the consumer."  15 U.S.C. § 1681o(a)(1).

110.   Plaintiff and the Nationwide Class members are also entitled to recover their costs of the action, as well as reasonable attorneys' fees.  15 U.S.C. § 1681o(a)(2).

**COUNT V
DECLARATORY JUDGMENT
(ON BEHALF OF PLAINTIFF AND
THE NATIONWIDE CLASS, OR, ALTERNATIVELY, PLAINTIFF
AND THE SEPARATE STATEWIDE CLASSES)**

111.   Plaintiff restates and realleges the facts of Paragraphs 1 through 62 as if fully set forth herein.

37

112.   As previously alleged, Plaintiff and the Class members entered into an implied contract that required Equifax to provide adequate security for the PII it collected from their payment card transactions.  As previously alleged, Equifax owes duties of care to Plaintiff and the Class members that require it to adequately secure PII.

113.   Equifax still possesses PII pertaining to Plaintiff and the Class members.

114.   Equifax has made no announcement or notification that it has remedied the vulnerabilities in its computer data systems, and, most importantly, its systems.

115.   Accordingly, Equifax has not satisfied its contractual obligations and legal duties to Plaintiff and the Class members.  In fact, now that Equifax's lax approach towards data security has become public, the PII in its possession is likely more vulnerable than it previously had been.

116.   Actual harm has arisen in the wake of the Equifax Data Breach regarding Equifax's contractual obligations and duties of care to provide data security measures to Plaintiff and the Class members.

117.   Plaintiff, therefore, seeks a declaration that (a) Equifax's existing data security measures do not comply with its contractual obligations and duties of care, and (b) in order to comply with its contractual obligations and duties of care, Equifax

must implement and maintain reasonable security measures, including, but not limited to:

a.     engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Equifax's systems on a periodic basis, and ordering Equifax to promptly correct any problems or issues detected by such third-party security auditors;

b.     engaging third-party security auditors and internal personnel to run automated security monitoring;

c.     auditing, testing, and training its security personnel regarding any new or modified procedures;

d.     segmenting PII by, among other things, creating firewalls and access controls so that if one area of Equifax is compromised, hackers cannot gain access to other portions of Equifax systems;

e.     purging, deleting, and destroying in a reasonable secure manner PII not necessary for its provisions of services;

f.     conducting regular database scanning and securing checks;

g.     routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

h.     educating its customers about the threats they face as a result of the loss of their financial and personal information to third parties, as well as the steps Equifax customers must take to protect themselves.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all Class members proposed in this Complaint, respectfully request that the Court enter judgment in their favor and against Equifax as follows:

a.     For an Order certifying the Classes, as defined herein, and appointing Plaintiff and their Counsel to represent the Nationwide Class, or in the alternative the separate Statewide Classes;

b.     For equitable relief enjoining Equifax from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and the Class members' PII, and from refusing to issue prompt, complete and accurate disclosures to the Plaintiff and Class members;

c.     For equitable relief compelling Equifax to use appropriate cyber security methods and policies with respect to consumer data collection, storage and protection and to disclose with specificity to Class members the type of PII compromised;

d.      For an award of damages, as allowed by law in an amount to be determined;

e.      For an award of attorneys' fees costs and litigation expenses, as allowable by law;

f.      For prejudgment interest on all amounts awarded; and

g.      For such other and further relief as this court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a jury trial on all issues so triable.

Dated: September 13, 2017      Respectfully submitted,

*/s/ Chris T. Hellums*
Chris T. Hellums (ASB-5583-L73C)
Jonathan S. Mann (ASB-1083-A36M)
Michael C. Bradley (ASB-2103-A64M)
Austin B. Whitten (ASB-7228-K13Y)
**PITTMAN, DUTTON & HELLUMS, P.C.**
2001 Park Place North, Suite 1100
Birmingham, AL 35203
Tel: (205) 322-8880
Fax: (205) 328-2711 facsimile
Email: PDH-efiling@pittmandutton.com

*/s/ N. Kirkland Pope*
N. Kirkland Pope (ASB-1252-E46P)
**POPE, McGLAMRY, KILPATRICK, MORRISON & NORWOOD, LLP**
3455 Peachtree Road, N.E., Suite 925
Atlanta, GA  30326-3256
Tel: (404) 523-7706
Fax: (404) 524-1648
Email: efile@pmkm.com

*Attorneys for Plaintiff*

**<u>PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL AS FOLLOWS:</u>**

Equifax, Inc.
c/o Prentice Hall Corporation System Inc.
641 South Lawrence Street
Montgomery, Alabama 36104

Equifax Information Solutions, LLC
c/o Prentice Hall Corporation System Inc.
641 South Lawrence Street
Montgomery, Alabama 36104